IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 16-cv-3050-WJM

ROBERT E. JOHNSON,

    Plaintiff,

v.

NANCY A. BERRYHILL, Deputy Commissioner for Operations, Social Security Administration,[*]

    Defendant.

---

## ORDER VACATING AND REMANDING
## ADMINISTRATIVE LAW JUDGE'S DENIAL OF BENEFITS

---

This Social Security benefits appeal is brought under 42 U.S.C. § 405(g). Plaintiff Robert E. Johnson ("Plaintiff") challenges the final decision of Defendant, the Acting Commissioner of Social Security ("Defendant" or the "Commissioner"), denying his application for disability insurance benefits. For the reasons set forth below, the ALJ's decision denying Plaintiff's application is vacated and remanded for further proceedings consistent with this order.

### I. BACKGROUND

---

[*] Ms. Berryhill was named as Acting Commissioner of the Social Security Administration on or around January 23, 2017. According to the Administration's website, she has now "returned to her position of record, that of Deputy Commissioner for Operations," but, "continues to lead the Social Security Administration as [it] await[s] the nomination and confirmation of a Commissioner." https://www.ssa.gov/agency/commissioner.html (last visited March 29, 2018). Evidently, at present there is no Acting Commissioner. *See generally* Letter from U.S. Government Accountability Office to the President *"Subject: Violation of the Time Limit Imposed by the Federal Vacancies Reform Act of 1998—Commissioner, Social Security Administration"* (March 6, 2018), *available at* https://www.gao.gov/assets/700/690502.pdf. In any event, Ms. Berryhill is substituted under Federal Rule of Civil Procedure 25(d).

A.     **Summary Factual and Medical Background**

Plaintiff was born in 1968. (R. 28.) He has a high school and college education and a history of working in the Information Technology ("IT") field. (R. 23, 104–05, 297.) In approximately July 2012, he began seeking treatment for a movement disorder which caused him to move frequently and suddenly during sleep, at times injuring himself. (R. 94.) In addition, by October 2013 he was seeing a family care provider, Dr. Andreas Edrich, for fibromyalgia, also reporting significant anxiety and related mental health concerns, and Dr. Edrich diagnosed "major depression." (R. 546.)

Beginning by November 2013, Plaintiff was seeking treatment from a rheumatologist, Dr. Cherie Reichart, whose records report "severe chronic fibromyalgia," "chronic pain syndrome," and "periodic limb movement disorder." (*See* R. 556, 560, 565.) In December 2013, Plaintiff visited the Mayo Clinic, where records report that he "[met] the 2010 criteria for fibromyalgia, with a widespread pain index score of 15/19, and a symptom severity score of 6/12," and also addressed his "sensitivity to light and other stimulus." (R. 403–04.)

By February 2014, Plaintiff was also seeing a neurologist, Dr. Bruce Morgenstern, who wrote a letter for his employer, requesting "that his time in the office be limited to twice weekly and no more than two hours during any one day," given his diagnosis of "fibromyalgia characterized by chronic widespread pain, and also associated sleep disorders including . . . periodic limb movements . . . and restless leg syndrome," and noting that "such activities as prolonged sitting . . . are limited" by these conditions. (R. 724.)

Although Plaintiff hired an attorney to assist him in seeking workplace

accommodations, these were not provided, and Plaintiff was ultimately terminated when his employer concluded he could not perform the essential functions of his job. (R. 80–81.) Plaintiff submitted a claim under a private disability insurance policy benefits in early January 2015. (*See* R. 719–20, 727). The same month, he reported to Dr. Reichart that he was unable to return to work "due to persistent severe sensory overload and chronic headaches." (R. 556.) At that time, Dr. Reichart's records reported that Plaintiff "attempted to maintain his position at work but the recurrent body pain and headaches are limiting," noting "daily severe migraine headaches and body pain, as well as "persistent anxiety." (*Id.*)

**B.      Procedural History and Agency Determination**

Plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act on January 9, 2015. (R. 19, 251–52.)

First representing himself, he requested and appeared at a hearing with an administrative law judge ("ALJ") on September 21, 2015. (R. 19, 38–67.) He requested a supplemental hearing, at which he was represented by counsel who indicated the record was not complete (R. 19, 68–74), which then led to a third hearing, held May 16, 2016 (R. 19, 75–111).

At the third hearing, Plaintiff testified, in part, that due to his sensory overload condition, working in an office environment would lead him to experience "an extreme level of pain, starting . . . with . . . a migraine headache, and then going to [his] body" (R. 82), and that conditions which tended to aggravate or exacerbate his condition, causing him to have headaches and/or experience other pain or symptoms included driving, fluorescent lights, "any sort of noise" or "any stimulation," including the sound of

keyboarding. (R. 82–83.) In describing the pain he experiences, Plaintiff testified, for example, that his wife (who is a physician) has insisted that he use a narcotic pain killer to make him "easier to be around" (R. 92–93), and that in order to attend church he must use pain medications and wear ear plugs (R. 102).

The ALJ denied benefits by written opinion dated August 31, 2016, following the Commissioner's five-step sequential evaluation process.[1] (*Id.* at 8–23.)

At step one, the ALJ concluded that Plaintiff has not engaged in any substantial gainful activity since his alleged onset date. (R. 21.)

At step two, the ALJ concluded that Plaintiff had the following impairments which "cause more than minimal functional limitations on basic work-related activities and are considered severe":

> fibromyalgia; restless leg syndrome; migraine headaches; osteoarthritis, status-post right knee arthroscopy . . . ; sensory overload syndrome; photophobia; somatic symptom disorder; panic disorder; generalized anxiety disorder; and, major depressive disorder.

(R. 21.)

At step three, the ALJ concluded that Plaintiff's impairments did not "mee[t] or medically equa[l] the severity of any of the listed impairments" in the Social Security

---

[1] The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988.) The claimant has the burden of proof in steps one through four; the Social Security Administration has the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

4

regulations. (R. 21.)

The ALJ then made a determination of Plaintiff's Residual Functional Capacity ("RFC"), finding he had the RFC:

> to perform light work as defined in 20 [C.F.R. §] 404.1567(b) with the following additional functional restrictions: occasional postural activities except no crawling or climbing of ladders, ropes and scaffolds; no exposure to hazards such as unprotected heights and moving mechanical parts; no concentrated exposure to extreme heat, extreme cold, vibration, loud noise, very loud noise, fumes, odors, dusts, gases and poor ventilation; no outdoor work in sunlight; limited to simple, routine and repetitive tasks; and, no more than occasional interaction with coworkers, supervisors and the public.

(R. 22.)

At step four, the ALJ determined Plaintiff was "unable to perform any past relevant work due to his mental limitations," and considering the hearing testimony of the vocational expert and Plaintiff's past work. (R. 28.)

At step five, however, the ALJ determined that, "considering the [Plaintiff's] age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy," relying on the testimony of a vocational expert that a person with limitations equivalent to Plaintiff's RFC "would be able to perform the requirements of representative light unskilled (SVP 2) occupations such as mailroom clerk . . . office helper . . . and, routing clerk." (R. 29.)

Accordingly, the ALJ concluded that Plaintiff "has not been under a disability, as

defined in the Social Security Act, from October 2014, through the date of this decision [August 31, 2016]."

The Appeals Council denied Plaintiff's request for review of the ALJ's decision (R. 1–7), and this action followed. The Court reviews the ALJ's decision as the Commissioner's final denial of benefits. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).

## II. LEGAL STANDARD

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id*. "It requires more than a scintilla, but less than a preponderance." *Lax* , 489 F.3d at 1084. Evidence is not substantial if it is overwhelmed by other evidence in the record. *Grogan v. Barnhart*, 399 F.3d 1257, 1261–62 (10th Cir. 2005).

In reviewing the Commissioner's decision, the Court does not reweigh the evidence, nor substitute the Court's judgment for that of the agency. *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). "On the other hand, if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993); *see also Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) ("The agency's

failure to apply correct legal standards, or show [the Court] it has done so, is also grounds for reversal.").

### III. ANALYSIS

Plaintiff's Objections go to the ALJ's RFC determination, arguing that the ALJ failed to "evaluate the medical evidence and medical source opinions as required by 20 C.F.R. § 404.1527," and that the RFC determination "is not supported by substantial evidence due [to] the ALJ's errors in evaluating the medical source evidence and opinions." (ECF No. 12 at 5.)

An ALJ's findings regarding the RFC must be supported by substantial evidence, *Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999), and based on all of the relevant evidence in the record, *see Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996); SSR 96–8p, 1996 WL 374184, at *5 (July 2, 1996). "Although the ALJ is entitled to draw reasonable inferences, his presumptions, speculations and suppositions should not be substituted for evidence." *Pinnt v. Chater*, 988 F.Supp. 1354, 1360 (D. Colo. 1997) (citing Soc. § Rep. Serv., Rulings 1983-1991)).

"[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 1994); 20 C.F.R. § 404.1527(d)(2) ("the final responsibility for deciding [the RFC] is reserved to the Commissioner"). However, particular standards and procedure must be applied when an ALJ weighs a treating physician's opinions. The ALJ must first consider "whether the opinion is well supported by medically acceptable clinical and laboratory diagnostic

7

techniques and is consistent with the other substantial evidence in the record. If so, the ALJ must give the opinion controlling weight." *Allman v. Colvin*, 813 F.3d 1326, 1331–32 (10th Cir. 2016) (internal quotation marks omitted). "But if the ALJ decides that the treating physician's opinion is not entitled to controlling weight, the ALJ must then consider whether the opinion should be rejected altogether or assigned some lesser weight." *Id.*

Factors the ALJ may consider include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* (citing *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir.2003)); 20 C.F.R. § 404.1527(c).

The ALJ "must give good reasons for the weight assigned to a treating physician's opinion," which "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight." *Allman*, 813 F.3d at 1332 (internal quotation marks omitted; alterations incorporated). "If the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." *Id.* While an ALJ need not "explicitly discuss all the § 404.1527(d) factors for each of the medical opinions," he or

techniques and is consistent with the other substantial evidence in the record. If so, the ALJ must give the opinion controlling weight." *Allman v. Colvin*, 813 F.3d 1326, 1331–32 (10th Cir. 2016) (internal quotation marks omitted). "But if the ALJ decides that the treating physician's opinion is not entitled to controlling weight, the ALJ must then consider whether the opinion should be rejected altogether or assigned some lesser weight." *Id.*

Factors the ALJ may consider include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* (citing *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir.2003)); 20 C.F.R. § 404.1527(c).

The ALJ "must give good reasons for the weight assigned to a treating physician's opinion," which "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight." *Allman*, 813 F.3d at 1332 (internal quotation marks omitted; alterations incorporated). "If the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." *Id.* While an ALJ need not "explicitly discuss all the § 404.1527(d) factors for each of the medical opinions," he or

she must make a record that "does not prevent [the Court] from according [the ALJ's] decision meaningful review." *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). Moreover, "[a]n ALJ cannot substitute [his] lay opinion for that of a medical professional." *Lax*, 489 F.3d at 1089.

Although the ALJ's RFC findings addressed—and effectively rejected—the views of all of Plaintiff's treating providers, the Court's analysis focuses only on Dr. Edrich (Plaintiff's family care provider) and Dr. Reichart (his rheumatologist).

**A.     Dr. Reichart**

As to Dr. Reichart, the ALJ acknowledged her opinion that Plaintiff is "permanently disabled" (R. 26), but rejected her opinions as a whole, "particularly in regards to the period of alleged disability which begins on October 20, 2014, after [Dr. Reichart's] opinions were authored" (R. 27). The Court finds the ALJ's opinion does not meet the required standard of providing "specific, legitimate reasons" for rejecting Dr. Reichart's medical opinions, in at least two respects.

First, while acknowledging "three separate written statements from Dr. Reichart, from October and November 2013 and February 2014, all of which indicate an inability to engage in full-time work activities" (R. 26), the ALJ discounted these records as "dated prior to the claimant's alleged disability onset date." (R. 26.) However, under the Social Security Regulations, the Agency is responsible to develop a claimant's "complete medical history for at least the 12 months preceding" the application. 20 C.F.R. § 404.1512(b). Here, this reflects a look-back period reaching to January

2014. (*See* R. 19, 251–52.) Thus, the rejection of Dr. Reichart's records from February 2014 as "prior to the . . . alleged disability onset date," is inconsistent with the legal standard defining the relevant "complete medical history." *See* 20 C.F.R. § 404.1512(b)(ii).

*Second*, noting that Plaintiff "concedes working during that period," and "reported . . . other significant daily activities that suggest a far greater capacity for sustained work," the ALJ rejected the limitations reported by Dr. Reichart as "markedly excessive given the absence of objective support in the records." (R. 26–27.) This conclusion is without citation to any specific record evidence, and without reference to any contrary medical opinion or evidence. (R. 26.) The rejection of a treating physician's medical opinions in this fashion therefore amounts to impermissibly "substitut[ing] [the ALJ's] own medical opinion for that of a disability claimant's treating docto[r]." *Hamlin*, 365 F.3d at 1221.

While the ALJ is entitled to deference in evaluating hearing testimony and its credibility, *see White v. Barnhart*, 287 F.3d 902 910 (10th Cir. 2001), and may consider "the degree to which the physician's opinion is supported by relevant evidence," as well as "consistency [with] the record as a whole," *Allman,* 813 F.3d at 1332, he may "reject [a physician's medical] opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation, or lay opinion." *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) (internal quotation marks omitted); *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (same).

Although the Commissioner characterizes the ALJ as having found that Dr. Reichart's opinion was "inconsistent with her own treatment notes" (ECF No. 13 at 12–13), the Court fails to see how the reported "normal gait and station, full joint range of motion, full muscle strength and no fine motor deficits" (R. 26) are actually inconsistent with the distinct disabling symptoms that Dr. Reichart also consistently reported, and which are uncontradicted by any cited medical evidence, *e.g.*, "persistent severe sensory overload," "severe diffuse body pain," "persistent anxiety," "brain fog," and "daily severe migraine headaches" (*see, e.g.,* R. 556, 561, 651).[2]

In fact the ALJ did not say that Dr. Reichart's opinions were inconsistent with her records. What the ALJ's decision states is that Dr. Reichart's "treatment reports . . . continue[d] to document the claimant's subjective physical and mental complaints . . . but remain absent significant objective support." (R. 26.) This frames the ALJ's stated reasons for rejecting Dr. Reichart's opinions not as a problem of inconsistency, but as relying on the absence of objective evidence or test results, and rejecting Dr. Reichart's treatment reports as being merely subjective. The Court views this as improperly discrediting the uncontradicted opinions of a treating physician, and substituting the ALJ's lay opinion and credibility determinations in their place. *See Robinson*, 366 F.3d at 1252; *see also Williams v. Bowne*, 844 F.2d 748, 754–55 (10th Cir. 1988) ("A

---

[2] Also problematic is the ALJ's statement—without citation—that "[m]ental status findings are . . . normal," in Dr. Reichart's records (R. 26), when in fact her clinical records report "brain fog," and "decreased concentration," that Plaintiff was "dysphoric," and had "significant side effects related to his medications" which, in her opinion, contributed to his permanent disability. (R. 558, 560, 563.)

11

medical finding itself . . . includes a physician's evaluation of observations and reported patient history"); *Hamlin*, 365 F.3d at 1221.  In any event, the Court must evaluate the denial of benefits "solely on the reasons stated in the decision," without *post hoc* re-evaluation of what other reasons might support denial, *see Robinson*, 366 F.3d at 1084; moreover, the ALJ's opinion must be "sufficiently specific to make clear to any subsequent reviewers . . . the reasons for [the] weight" given to a physician's opinions, *see Oldham*, 509 F.3d at 1258.  The explanation provided by the ALJ for rejecting Dr. Reichart's opinions regarding the intensity, duration, persistence, and/or treatability of Plaintiff's allegedly disabling symptoms does not provide specific, legitimate reasons for this decision, nor does it demonstrate that the ALJ applied the correct legal standards.  *Hamlin*, 365 F.3d at 1214.

**B.     ALJ's Treatment of Dr. Edrich**

Similar problems are reflected in the ALJ's rejection of Dr. Edrich's opinion. Dr. Edrich opined that as of January 12, 2015 Plaintiff was "completely unable to work in an office environment," and "his disability is considered to be permanent." (R. 721.) As with Dr. Reichart, the ALJ rejected this opinion as "without significant objective findings, "based primarily on the claimant's subjective complaints," and because it "disregards the very significant daily activities the claimant has reported performing despite his physical and mental symptoms." (R. 26.)  Further, the ALJ found Dr. Edrich's opinion "conclusory," and "simply not persuasive," but without citing or discussing any contradictory medical evidence, and therefore, at least implicitly relying on his own opinion, credibility determinations, or inferences from the medical records.

*McGoffin*, 288 F.3d at 1252.

While the Court agrees that the brief letter cited from Dr. Edrich is, by itself, conclusory, that ignores the fact that his January 2015 opinion was predicated on treatment that had begun more than a year before. (*See* R. 546, 553.) The ALJ acknowledged this treatment, but concluded, again without citation to any particular document or record, that some 11-pages of examination records from that time period "were generally normal . . . with no indication for any significant work-related restrictions," although these records, in part, diagnose fibromyalgia and "major depression," report "physical pain . . . 9/10" (R. 547), and inpatient mental/behavioral health treatment, as well as benzodiazepine withdrawal (R. 26).

As with Dr. Reichart, the ALJ's discussion tends to reflect that the ALJ improperly substituted his own lay opinion for Dr. Edrich's opinion, or at least that the stated reasons for rejecting Dr. Edrich's conclusions are insufficiently specific for the Court to conclude that they were legitimate and applied correct legal standards. While the RFC determination is reserved for the Commissioner rather than medical experts, *Howard*, 379 F.3d at 949, the ALJ's discussion goes further, reflecting a rejection of a treating provider's determinations regarding the severity, persistence, duration, and impact of Plaintiff's symptoms as a medical matter, and discounting a treating physician's opinions as being simply "subjective." The Court finds this inconsistent with the general rule that a treating physician's opinion should be given controlling weight, so long as it is consistent with substantial evidence in support. *See Watkins*, 350 F.3d at 1300. Here, essentially all of the medical evidence is consistent with Dr. Edrich's opinions regarding

Plaintiff's conditions and symptoms, and with the ALJ's own conclusion that Plaintiff's impairments could reasonably be expected to cause his alleged symptoms. (R. 24.)

Further compounding the error, the ALJ's opinion cites in bulk to a 110-page set of records submitted for Plaintiff's private insurance claim, ostensibly for the proposition that "evidence from this same facility [*i.e.*, Dr. Edrich's practice] . . . reflect[s] subjective complaints . .. but . . . without . . . objective findings." (*See* R. 26 (citing Exhibit 32F); R. 719–828.) However, many of the pages in this lengthy set of records are not even from Dr. Edrich's practice, and this bulk citation therefore fails to provide a sufficiently clear and specific explanation of the reasons why the ALJ found Dr. Edrich's opinion "unpersuasive," and lacking in objective support. *See, e.g.*, *Romo v. Colvin*, 83 F.Supp.3d 1116, 1121 n.4 (D. Colo. 2015) (faulting an ALJ's "global references to multi-page exhibits, without pinpoint citations to specific pages"; "This court is neither required nor inclined to scour the record in an attempt to divine the specific basis for an ALJ's opinion."); *accord Sturla v. Berryhill*, 2017 WL 3217828, at *6 (D. Colo. July 28, 2017) ("This court is wary that such a practice satisfies the ALJ's burden.").[3]

---

[3] Numerous judges in this district have found error in an ALJ's failure to provide specific page citations within lengthy documents or sets of records. *See, e.g., Brown v. Colvin*, 82 F.Supp.3d 1274, 1279 n.5 (D. Colo. 2015) (citing additional cases; "The Commissioner should now have fair notice of this court's position that, in general, such global references will not constitute substantial evidence . . . and thus will warrant remand."). The Commissioner objects that "there is no binding legal authority that requires the ALJ to cite specific page numbers: nothing in the Act, the regulations, or controlling Tenth Circuit precedent." (ECF No. 13 at 13 n.6.)

Here, while some of the ALJ's citations include page numbers, or cite to records only a few pages in length, other citations are to longer sets of documents, without page numbers or "pincites." The Court need not decide in this case whether a failure to provide pincites itself warrants reversal. However, the lack of specificity of the citations in this case, particularly as to

Given the foregoing, reversal and remand of the Commissioner's denial of benefits is warranted and the Court need not address the additional medical opinions and other issues raised in the parties' briefs. However, the Court does not intend by this opinion to suggest the results that should be reached on remand; rather, the parties and the ALJ should fully consider the evidence and all issues raised anew on remand, and articulate the reasons for any future decision consistent with the relevant legal standards. *See Kepler v. Chater*, 68 F.3d 387, 391–92 (10th Cir. 1995) ("We do not dictate any result [by remanding the case]. Our remand simply assures that the correct legal standards are invoked in reaching a decision based on the facts of the case." (internal quotation marks omitted)).

## IV.  CONCLUSION

For the reasons set forth above, the Commissioner's decision is VACATED and this case is REMANDED to the Commissioner for further proceedings consistent with this Order.

Dated this 30th day of March, 2018.

BY THE COURT:

William J. Martinez
United States District Judge

---

Dr. Edrich, reflects a failure to support a material point, as well as a mis-match between the stated factual proposition and the documents cited. This compounds the error in rejecting treating physicians' opinions without articulating specific, legitimate reasons. On remand, the ALJ should be cautious to avoid overly general citations to the record.